Curia, per
Southerland, J.
is not necessary that the owner of land should be in the actual possession of it, to enable him to give a valid lease. The undisputed right of possession, I apprehend, is sufficient. Here James Nichols has never questioned the plaintiff’s right to give the lease. On the contrary, the evidence warrants the inference that Charles Nichols went into possession of the store with the assent of James, immediately after the purchase. James appears to have surrendered the possession *579 of the store, and to have been permitted by the plaintiff to occupy a single room in the back part of it.
It is true that the plaintiff could not have obtained the possession of the premises against the will of James Nichols, without an action of ejectment. (13 John. 344.) But the tenant had a right voluntarily to surrender the possession. And I apprehend that, as between a purchaser of land at sheriff’s sale and all third persons, if the defendant remains in possession after the sale, the presumption of law is, that he remains as the tenant of the purchaser, and in subordination to his title. It is not for strangers í i to say that he holds in hostility to the true owner.
Nor is it material, whether the property taken belonged to James Nichols, the defendant in the execution, or to Charles, the tenant of the plaintiff. The statute is express, that no goods or chattels whatsoever, in or upon the demised premises, shall be liable to be taken by virtue of any execution, <fcc. unless the party, at whose suit tire execution is sued out, shall pay to the landlord of the premises, or his bailiff, all and every sum or sums of money due for rent, at the time of taking the goods or chattels by virtue of the execution; not exceeding, however, oneyear’s rent. Whether the statute would extend to property casually upon the premises, belonging to strangers, which the tenant did not claim to own, so as to protect it from execution, may perhaps be questionable. It certainly would not, if it appeared to have been placed there with the fraudulent intent of protecting it from execution, and the. landlord was a party to the fraud. But where the property is claimed by the tenant, and is upon the premises in his actual possession, it is clearly, both by the letter and spirit of the act, protected from execution, until the rent is paid. The landlord had a right to look to, and rely upon it as security for his rent; and the legal presumption is, that he did rely upon it. He was not bound to inquire into the claims of third persons to the property. He had a right to distrain it; and it would seem to have been the intention of the legislature to give the landlord a specific lien, co-extensive with his right of distress, to the amount of one year’s rent. (Woodfall, 563.) No terms could have been *580 used more comprehensive than those of the 12th section of our act, (1 R. L. 437:) “ No goods or chattels whatsoever, in or upon the demised premises, shall be liable to be taken by virtue of any execution not an execution against the tenant only, but against any other person. The 13th and 14th sections of the act, which authorize the landlord to seize any goods which may have been removed from the premises, and impose a penalty on tenants and others removing goods, to defraud the landlord of his rent, are expressly confined to the goods of the tenant, and do not extend to any other goods which may be upon the premises.
In this case, therefore, I repeat, it is immaterial, whether the goods removed belonged to James or Charles Nichols. They ostensibly belonged to Charles. They were purchased by him at sheriff's sale, and had ever since the purchase been in his exclusive possession. There is no evidence that the sale was fraudulent and colorable. If the defendant intended to take that ground, he should have gone to the jury upon it. It was a question for them to decide. He voluntarily declined submitting the cause to the jury, thereby admitting that there were no facts in dispute, and that the whole merits of the case were embraced in the questions of law decided by the Judge, and to which be excepted. To those exceptions, therefore, he must now be confined. The property removed is, by the course of the trial, admitted to have belonged to the tenant.
But it is objected that the rent in this case was not due within the meaning of the statute.
It is well settled, that the landlord can claim from the party suing out the execution, or the sheriff, only the amount of the rent due at the time of the levy. The English Courts, as Avell as our OAvn, have thus expounded the statute. (1 M. & S. 245. 18 John. 1.) The defendant contends that the rent must be due, m virtue of actual occupancy, and not in advance, in consequence of an agreement, in order to give the landlord a specific lien under the statute. Rent may be reserved in advance, so as to giye the landlord either a right of action, or a right to dis • *581 train for it, immediately upon the tenant entering into possession. (Gilb. on Rents, 25. Woodfall, 238. 2 Bac. Ab. tit. Distress, (C). 2 T. R. 600. 6 Mod. 214.) The case of Buckley v. Taylor, (2 T. R. 600,) involved the very question whether rent payable in advance, cither by contract or the custom of the country, was due within the 8 Ann. c. 14, which is like the 12th section of our act; and Erskine contended there, as it has been contended here, that tho provisions of that statute only extended to rent which had become due in respect of the actual occupation of the tenant. But the Court held otherwise. Buller, Justice, says, “ In general, the landlord cannot distrain till the rent becomes due, (that is, until the end' of the year;) but if the agreement be otherwise, I see no objection to it in point of law. If the tenant take a lease, and agree that the rent shall be payable on a particular day, the law gives the landlord a power of distraining on that day.” That rent, surely, must be due for which the landlord has a right to distrain ; and there is nothing in tho terms of the statute, or in the reason or nature of the case, from which it' is to be inferred that the legislature intended to confine the specific lien given to landlords by the 12th section of the act, to rent which had become due by actual occupancy. It has always been held that this statute was to have a liberal construction. (Woodfall, 564. 2 Wils. 141. 5 Bin. 505.) I am therefore of opinion that the motion for a new trial must be denied.
New trial refused.